# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN CARD**, <br><br> Plaintiff, <br><br> v. <br><br> **WELLS FARGO BANK, N.A.**, <br><br> Defendant. | Case No. 3:19-cv-1515-SI <br><br> **OPINION AND ORDER** |

Michael Fuller, OLSENDAINES, U.S. Bancorp Tower, 111 SW Fifth Avenue, Suite 3150, Portland, OR 97204; Kelly D. Jones, 819 SE Morrison Street, Suite 255, Portland, OR 97214. Of Attorneys for Plaintiff.

Rebecca S. Saelao and Adam A. Vukovic, SEVERSON & WERSON, One Embarcadero Center, Suite 2600, San Francisco, CA 94111; Robert E. Sabido, COSGRAVE VERGEER KESTER LLP, 900 SW Fifth Avenue, 24th Floor, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff John Card opened and maintained a credit card account with Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Plaintiff's account ultimately fell into arrears for an unpaid balance. Plaintiff alleges that on December 20, 2017, among other times, he sent a letter by certified mail to Well Fargo and that Wells Fargo received that letter on December 26, 2017. In that letter, Plaintiff allegedly states that he revoked any prior express consent that he may have given to Wells Fargo to call Plaintiff's cell phone number and demanded that Wells Fargo cease

PAGE 1 – OPINION AND ORDER

making any further calls to that number. Plaintiff also alleges that, notwithstanding his revocation and demand letter, Wells Fargo, either directly or through an agent, continued to call Plaintiff's cell phone without authorization. Plaintiff further alleges that between February 2018 and December 2018, Wells Fargo or its agent called Plaintiff's cell phone at least 197 times. Plaintiff asserts a claim against Wells Fargo for violating the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. Plaintiff seeks statutory damages for each call.

Wells Fargo has moved to compel arbitration, based on the terms contained in what Wells Fargo contends is its credit agreement with Plaintiff. Wells Fargo also moves to dismiss or stay this action on the ground that the lawsuit is subject to mandatory and binding arbitration. Wells Fargo asserts that in December 2010, Plaintiff applied online for a Wells Fargo credit card, and that Wells Fargo approved and opened a credit account for Plaintiff in January 2011. According to Wells Fargo, when Plaintiff applied online for his account, Plaintiff was informed of all terms in the Wells Fargo consumer account agreement, including the arbitration clause. Also, Wells Fargo states that it would update the terms of its consumer customer agreements from time to time and mail copies of the updated terms to its customers. Wells Fargo also contends that a customer accepts updated terms by continuing to use the Wells Fargo credit card.

Plaintiff does not deny the existence of a mandatory arbitration provision in Wells Fargo's form written credit agreement. Plaintiff also does not deny that if the form agreement applies to Plaintiff, then the arbitration provision in that agreement would encompass Plaintiff's TCPA claim. Instead, Plaintiff only disputes that he ever received *any* of the written credit agreement forms that Wells Fargo allegedly mailed to him. Thus, according to Plaintiff, he never entered into any written agreement with Wells Fargo that contains a mandatory arbitration clause. For the reasons set forth below, Defendant's motion is deferred pending an evidentiary

hearing or jury trial that resolves the factual dispute of whether the parties entered into an agreement that contains a mandatory arbitration provision.

## STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15, applies to all contracts involving interstate commerce and specifies that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The text of the FAA "leaves no place for the exercise of discretion by a district court," but instead "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (citing 9 U.S.C. §§ 3-4) (emphasis in original). The district court must limit itself "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). However, the "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question whether a particular party agreed to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). The validity of an arbitration agreement remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Because arbitration is fundamentally "a matter of contract," the FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67

(2010) (citations omitted). Courts also should generally "apply ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[1]

Unless there is clear and unmistakable evidence that the parties agreed that an arbitrator should decide issues of arbitrability, *see First Options of Chicago*, 415 U.S. at 944, a court, not an arbitrator, must decide "the threshold issue of the existence of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). In deciding whether an agreement to arbitrate existed, a court should apply a summary-judgment-style standard. "Only when there is no genuine issue of fact concerning the formation of the agreement" should the court decide as a matter of law that an agreement to arbitrate existed. *Id.* at 1141 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). The district court should give the party opposing a motion to compel arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "The court shall hear and determine such issue" if the party alleged to be in violation of the agreement does not demand a jury trial. *Id.*

---

[1] The only exception to the rule that state law governs the validity of arbitration agreements is when courts must "decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago*, 514 U.S. at 944 (quoting *AT & T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 649 (1986)).

## BACKGROUND

Applying the standards applicable to a motion for summary judgment (Fed. R. Civ. P. 56), the Court draws the following facts from the allegations in Plaintiff's Complaint, the parties' briefs, the filed declarations, and the exhibits submitted by Wells Fargo. At this stage of the dispute, the Court considers only those facts that are relevant to whether the parties entered into an agreement that contains a mandatory arbitration clause.

In December 2010, Plaintiff applied online for a credit card with Wells Fargo. Wells Fargo contends, but Plaintiff disputes, that as part of Plaintiff's online application, Plaintiff was presented with a link to the Wells Fargo's Consumer Credit Card Customer Agreement and Disclosure Statement ("Customer Agreement"). Wells Fargo contends that Plaintiff had to "click" to confirm the following acknowledgment as part of his online application: "I acknowledge that I have received these electronic agreements, disclosures, and other documents."

The Customer Agreement that Wells Fargo asserts was linked to Plaintiff's online application contained the following arbitration clause:

> **Arbitration**
>
> **(33) DISPUTE RESOLUTION PROGRAM: ARBITRATION AGREEMENT**
>
> a. <u>Binding Arbitration</u>. You and Wells Fargo Bank, N.A. (the "Bank") agree that if a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. The foregoing notwithstanding, the Bank shall not initiate an arbitration to collect a consumer debt, but reserves the right to arbitrate all other disputes with its consumer customers. A "Dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to the Card or related services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access the Bank. It includes claims based on broken promises or

contracts, torts, or other wrongful actions. It also includes statutory, common law and equitable claims. A Dispute also includes any disagreements about the meaning or application of this Arbitration Agreement. This Arbitration Agreement shall survive the payment or closure of your account. **YOU UNDERSTAND AND AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.** As the sole exception to this Arbitration Agreement, you and the Bank retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction. If either you or the Bank fails to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

b. <u>Arbitration Procedure; Severability</u>. Either you or the Bank may submit a Dispute to binding arbitration at any time notwithstanding that a lawsuit or other proceeding has been previously commenced. **NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY**. Each arbitration, including the selection of the arbitrator(s) shall be administered by the American Arbitration Association (AAA), or such other administrator as you and the Bank may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules"). To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control. Arbitrator(s) must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the Dispute. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. You and the Bank (the "Parties") agree that in this relationship: (1) The Parties are participating in transactions involving interstate commerce; and (2) This Arbitration Agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that Act is inapplicable, unenforceable or

> invalid, the laws of the state of South Dakota. If any of the
> provisions of this Arbitration Agreement dealing with class action,
> class arbitration, private attorney general action, other
> representative action, joinder, or consolidation is found to be
> illegal or unenforceable, that invalid provision shall not be
> severable and this entire Arbitration Agreement shall be
> unenforceable.

ECF 12-2 at 28 (emphasis in original).

That same Customer Agreement also contained the following clause regarding acceptance of the agreement:

> **(2) ACCEPTANCE OF AGREEMENT**. By either using the
> account or signing, using or accepting the plastic card(s) issued to
> you by us (your "Card(s)"), you accept the terms and conditions of
> this Agreement. Whenever the word "Card(s)" is used in this
> Agreement, it includes the credit card account associated with the
> Card.

*Id.* at 21 (emphasis in original).

According to the documents provided by Wells Fargo, it approved Plaintiff's application, issued his credit card, and mailed a package containing that card to Plaintiff on January 14, 2011. The document onto which Plaintiff's card was affixed stated: "*Please see the next page for important Terms of Your Credit Card Account*." ECF 17 at 7 (emphasis in original). The "Important Terms of Your Credit Card Account" document that accompanied the mailing of Plaintiff's credit card, however, did *not* contain any arbitration clause and also did *not* contain a clause stating that use of the card is an acceptance of all the terms of the Customer Agreement. ECF 17 at 9. This document referenced the Customer Agreement as being "enclosed," but the Customer Agreement was *not* enclosed with that mailing. Plaintiff made purchases on his credit card, thereby confirming receipt of that card. Wells Fargo asserts that sometime later in January 2011, it mailed a copy of the Customer Agreement to Plaintiff at the same address to which his credit card was sent.

Wells Fargo contends that some time in December 2011, it mailed Plaintiff an updated Customer Agreement. This Customer Agreement contained a nearly identical arbitration clause as the Customer Agreement mailed in January 2011. Wells Fargo asserts that this updated Customer Agreement was mailed to the same physical address as the previous agreement and the credit card. On August 7, 2014, Wells Fargo sent Plaintiff a new credit card, to the same physical address. Plaintiff made purchases on that new card. Wells Fargo contends that some time in September 2014, Wells Fargo mailed Plaintiff another updated Customer Agreement, again to the same address. This Customer Agreement also contained a nearly identical arbitration provision.

On January 13, 2016, Wells Fargo mailed Plaintiff a new credit card, to the same physical address. Plaintiff made purchases on that new card. Wells Fargo asserts that it mailed Plaintiff an updated Customer Agreement sometime in April 2016, to the same address Wells Fargo had been sending all of its agreements and credit cards. The 2016 Customer Agreement contained a nearly identical arbitration provision to the 2011 Customer Agreement. Plaintiff's credit card account was closed on June 22, 2017.

In response to the pending motion and requests for additional information from the Court, Plaintiff submitted three declarations. Plaintiff admits that he received mail at the address to which Wells Fargo purportedly sent the Customer Agreements. ECF 23 at 2 (¶ 2). Plaintiff also states that he reads agreements and disclosures both before signing up for credit cards and when a credit card company sends agreements and disclosures to Plaintiff in the mail. *Id.* (¶ 3). Plaintiff also states that he does not recall ever receiving any agreement or disclosure from Wells Fargo that referred to arbitration. *Id.* at 3 (¶ 4). Based on this, Plaintiff disputes that he ever

received a copy from Wells Fargo of any customer agreement that referred to arbitration. *Id.*

Plaintiff further states:

> 2. I never entered an arbitration agreement with Wells Fargo, either verbally, in writing, or otherwise. I never signed an arbitration agreement with Wells Fargo. I was never provided an arbitration agreement by Wells Fargo and I was never made aware of the existence of any alleged arbitration agreement with Wells Fargo, either verbally, in writing, or otherwise, until Wells Fargo first stated its intent to force me to arbitrate my claim after this lawsuit was filed.
>
> 3. I was never made aware of any link to any agreements governing my account or referring to arbitration on Wells Fargo's website. I was never presented with any screen requesting that I acknowledge receipt of any agreements, disclosures, and other documents on Wells Fargo's website.

ECF 21 at 2-3.

## DISCUSSION

**A. Motion to Compel Arbitration**

The parties dispute whether Plaintiff assented to the arbitration agreement contained in any Wells Fargo's Customer Agreement. Whether Plaintiff assented to an arbitration agreement turns on whether he received a copy of the Wells Fargo Customer Agreement.[2] If Plaintiff did receive a copy of the Customer Agreement, his later conduct in using his credit card may be deemed to demonstrate his agreement to the terms and conditions contained in the Customer Agreement, including its arbitration clause.

---

[2] Plaintiff argues that even if a Customer Agreement were mailed to Plaintiff, Wells Fargo did not follow its own policies and procedures in amending Customer Agreements and thus any amended agreements are not valid. Because the arbitration provision was not substantively amended, this argument is unavailing for purposes of the pending motion. Assuming that Plaintiff is correct, any purportedly improperly amended provision could be excised or severed from the amended contract, and it would not affect the analysis of the validity of the arbitration clause at issue.

In disputing whether he agreed to arbitrate, Plaintiff relies on this Court's opinion in *Campos v. Blustem*, 2015 WL 5737601 (D. Or. Sept. 30, 2015). In *Campos*, the Court found that there was insufficient evidence that the defendant had provided the plaintiff with a copy of the credit agreement containing the arbitration clause, and deferred ruling on the motion to compel arbitration until after an evidentiary hearing or jury trial determined the threshold factual issue of contract formation.

In *Campos*, the plaintiff applied for a credit card over the telephone and provided her mother's mailing address, where the plaintiff did not reside. *Id.* at *1. The defendant claimed to have followed its usual custom and practice to send a "welcome packet" with the credit agreement containing the arbitration clause. The plaintiff submitted a declaration that she recalled receiving only a two-page letter with the detachable card, and no welcome packet. *Id.* at *4. The Court found that her specific recollection of receiving the two-page letter was more than a simple denial of receiving the card agreement; the Court also noted that any welcome packet would have been sent to the plaintiff's mother's address, where the plaintiff did not reside. *Id.* at *4, 7. The Court also found persuasive the fact that the defendant did not provide evidence that the plaintiff had routinely received mail at that address or that the defendant had a permanent message system for tracking account activity on the plaintiff's account, such as communications and notifications. *Id.* at *8.

Unlike the defendant in *Campos*, Wells Fargo has submitted evidence that it has a permanent message system that keeps track of account activity, including for Plaintiff's account. A Wells Fargo employee reviewed that permanent system to determine the specific information relating to Plaintiff's account, including the date of Plaintiff's online application, the dates when Wells Fargo mailed to Plaintiff his several credit cards, and the dates when Wells Fargo mailed

to Plaintiff the various Customer Agreements. *See Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 464 (S.D.N.Y. 2004) (finding persuasive the testimony of a bank employee who reviewed the bank's permanent message system that tracked account activity relating to the details of when an arbitration agreement amendment was sent to an accountholder). Notably, however, after reviewing its permanent message system, Wells Fargo could provide specific dates that it mailed to Plaintiff each of his credit cards, but could only generally assert a month in which Wells Fargo believes it mailed Customer Agreements to Plaintiff. It does not appear that the tracking system provides Wells Fargo with detail regarding the mailing dates of *Customer Agreements*, which are the relevant documents here.

Wells Fargo also submitted evidence that Plaintiff regularly received mail at the address to which these Customer Agreements were sent, including his credit cards sent in January 2011, August 2014, and January 2016, and billing statements. Plaintiff also admits that he received mail at that address. *See Hoefs v. CACV of Colorado, LLC*, 365 F. Supp. 2d 69, 73 (D. Mass. 2005) (finding persuasive testimony from a bank employee that the card agreement amendment was mailed and that a billing statement was mailed to the same address). This fact alone, however, is insufficient, at least on a summary judgment standard, in the face of Plaintiff's specific contrary statements regarding his practice of reading disclosures both before opening credit cards and when new agreements and disclosures are mailed to him, his specific denial of receiving any disclosures relating to arbitration, and his denial of receiving any of the Wells Fargo Customer Agreements.

Finally, the evidence relating to Plaintiff's online credit card application in December 2010 is both disputed and the online agreement is not necessarily the type of agreement that imputes knowledge of an arbitration agreement. Wells Fargo contends that from the application

webpage, Plaintiff was provided with a hyperlink to review the disclosures and agreements that contained the arbitration clause, which were not located on the same webpage. Later in the application webpage, Plaintiff was asked whether he affirmatively acknowledged that he had reviewed those terms. Plaintiff, however, could have clicked that acknowledgment even without clicking on the hyperlink and linking to the different webpage containing the agreements and disclosures.

Wells Fargo argues that this is an enforceable "clickwrap" agreement. A pure clickwrap agreement, however, has the terms and conditions on the same webpage, and a user is forced to scroll through them and then click "I agree." *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016). A "browsewrap" agreement, in contrast, has merely a hyperlink and the user does not have to click to indicate any agreement. *Id.* "Although there is no per se rule of validity or invalidity on either end, our Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable." *Id.*

Because Wells Fargo contends that its agreements and disclosures were merely linked, it was not a pure clickwrap agreement, although because there was purportedly an acknowledgement, it also is not a pure browsewrap agreement. Even if the Court were to find that Plaintiff did click on the acknowledgment of his receipt of the hyperlinked agreements and disclosures, the Court might still require further information to determine whether the digital agreement was enforceable, such as the nature of the hyperlink (*e.g.*, how noticeable, how labelled), the placement of the agreements and disclosures and specifically the arbitration agreement after clicking on the hyperlink (*e.g.*, a pop-up, a new browser window, how far down

to the arbitration agreement, and so forth), and the placement of the acknowledgment after returning to the application webpage.

Considering all the circumstances of this case, the Court finds that there is a genuine dispute of material fact regarding whether a valid arbitration agreement exists. Wells Fargo has not sufficiently proven that Plaintiff received and was aware of the terms of any of Customer Agreement purportedly provided to him. As in *Campos*, "this dispute involves the credibility of the parties, which the Court cannot determine based on the evidence thus far submitted. Therefore, before ruling on [Wells Fargo's] motion, an evidentiary hearing [or jury trial] must be held to determine whether a valid arbitration agreement exists." *Campos*, 2015 WL 5737601, at *11.

## CONCLUSION

Because Plaintiff has shown a genuine dispute whether a valid arbitration agreement exists and the parties have the right to an evidentiary hearing or jury trial on this issue, the Court defers ruling on Wells Fargo's motion to compel arbitration (ECF 12) until after such a hearing or trial. The parties are directed to confer with each other on whether they jointly waive their right to a jury trial and consent to an evidentiary hearing or whether a jury trial will be needed. Further, within two weeks from the date of this Opinion and Order, the parties shall notify the Courtroom Deputy of their decision, who will then schedule an appropriate proceeding.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge